RECEIVED
IN LAKE CHARLES, LA.

**UNITED STATES DISTRICT COURT**

MAY 16 2012

**WESTERN DISTRICT OF LOUISIANA**

TONY R. MOORE, CLERK
BY _____
DEPUTY

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **DAWN M. CONNER** | : | **DOCKET NO. 2:07CV01044** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL F. ASTRUE,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Presently before the court is petitioner's petition for review of the Commissioner's denial of social security disability benefits. This matter is before the court pursuant to §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), this court finds that the Commissioner's decision is not supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

### BACKGROUND

The petitioner, Dawn M. Conner ("Conner") is a sixty-five year old woman who is seeking social security disability benefits. She was born June 7, 1946 and was sixty years of age when she appeared before the ALJ on September 13, 2006 (Tr. 54, 290). She graduated from high school and attended college for a year and a half (Tr. 29). All of her past relevant work was as a bookkeeper (Tr. 74, 291). Conner alleges she became unable to work on July 22, 2004 after her skills and abilities deteriorated and she began to miss numerous days from work due to illness (Tr. 54,110,292-293).

Conner has not worked since July 22, 2004 and claims she became totally disabled as a

1

consequence of a number of medical problems, including fibromyalgia (Tr. 253-254). The list of prescription medication being taken by Conner is extensive (Tr. 77,109,158,314). Some of the medical evidence, submitted by Conner's treating physician, indicates that she was diagnosed with fibromyalgia in early 2002 (Tr. 217-218). She was able to handle the pain associated with this disease until July 2004. According to her treating physicians Conner is followed with a diagnosis. of chronic renal insufficiency, type 2 diabetes mellitus, hypertension, monoclonal gammopathy, gout, fibromyalgia and hyperliproteinemia (Tr. 253-254).

## PROCEDURAL HISTORY

Conner filed her application for a period of disability and disability insurance benefits on August 6, 2004 alleging she became unable to work on July 22, 2004 (Tr. 54-58). The application was denied November 22, 2004 (Tr. 22-25). Request for a hearing before an Administrative Law Judge (ALJ) was timely submitted (Tr. 26-27). Receipt of the request for hearing by ALJ was acknowledged by notice dated February 4, 2005 (Tr. 28-29).

By notice dated August 10, 2006 a hearing was scheduled for September 13, 2006 (Tr. 39-50). A medical expert (ME) and a vocational expert (VE) were invited by the ALJ and requested to give testimony (Tr. 32-38). Conner appeared and testified at the administrative hearing (Tr. 290-301). Also appearing and testifying were Elizabeth Landry, Conner's neighbor (Tr. 301-303), Dr. Earl Beard, medical expert (Tr. 303-305) and Maunsell Wilkinson, vocational expert (Tr. 305-313). On October 6, 2006 the ALJ issued a Notice of Decision-Unfavorable (Tr. 10-18). That decision found that Conner had not been under a "disability," as defined in the Social Security Act, from July 22, 2004 through the date of the decision (Tr. 18).

A review by the Appeals Council was requested on December 5, 2006 (Tr. 281). The Appeals

Council concluded on April 10, 2007 that there was no reason under its rules to review the ALJ decision and therefore, denied Conner's request for review (Tr. 6-9).

Petitioner now seeks to have this court review the denial of disability benefits. Specifically, petitioner claims that the ALJ erred in the following ways:

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(2) the ALJ improperly evaluated the opinions of Dr. Mendez and Dr. Lie; and

(3) the ALJ improperly discounted the petitioner's credibility.

## STANDARD OF REVIEW

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[1] Substantial evidence is that which a reasonable mind might accept to support a conclusion.[2]  "It is more than a mere scintilla and less than a preponderance."[3] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present.  We may not reweigh the evidence, try the issues *de novo,* or substitute our judgment" for that of the Commissioner.[4]

In order to be eligible for disability benefits, the claimant must prove that she has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve

---

[1]  *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

[2]  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[3]  *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

[4]  *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

3

months that prevents her from engaging in a substantial gainful activity.[5]  Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[6]

The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the claimant is presently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the claimant from doing her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.[7]

Before considering the fourth and fifth steps, the Commissioner must determine the claimant's residual functional capacity (RFC).[8]  The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. In determining the RFC, the Commissioner must consider all of a claimant's impairments, including those that are not severe.[9]

The claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the claimant shows she is no longer capable of performing her

---

[5]  42 U.S.C. § 423(d)(1)(A).

[6]  20 C.F.R. § 404.1572(a) and (b).

[7]  *Id.* § 404.1520(a).

[8]  *Id.* §404.1520(e).

[9]  *Id.* § 404.1545.

4

previous jobs, the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.[10]

COURT'S FINDINGS

Residual Functional Capacity

At step 4 of the five step sequential evaluation, the ALJ evaluated petitioner's residual functional capacity to determine if she could perform her past relevant work. The ALJ acknowledged the petitioner's diagnosis of fibromyalgia and noted that the testifying medical advisor, Dr. Earl Beard, opined that the condition did not meet the criteria of a listed impairment (Tr. 15-16, 287-290). The ALJ found that petitioner retained the residual functional capacity to perform sedentary work.[11]

The petitioner argues that it is the ALJ's erroneous evaluation of the subjective symptoms arising from Conner's fibromyalgia that undermines that ALJ's RFC assessment. Dr. Enrique A. Mendez, a rhuematologist and Conner's treating physician, documented (Tr. 182-183, 187, 192) that Conner met the American College of Rheumatology revised criteria by having at least fourteen of the eighteen trigger points[12] to support a diagnosis of fibromyalgia.

---

[10]   *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)

[11]   Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying certain articles like docket files, ledgers, or small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying our job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a).

[12]   The American College of Rheumatology guidelines for diagnosing fibromyalgia include primary widespread pain in all four quadrants of the body and at least 11 of the 18 specified trigger points of the body. Social Security Disability Law and Proc. §5.71; *Green-Younger v. Barnhart,* 335 F.3d 99, 89 Soc. Sec. Rep. Serv. 256. The Social Security Administration has endorsed this analysis.  *Green-Younger,* at 99; 61 Fed. R. Ediv. Serv. 1253 (2nd Cir. 2003) citing SSA Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication, at 5 (May 11, 1998)

5

Social Security Disability Law and Proc. §5.71 notes that:

> The diagnosis of fibromyalgia by a doctor bolsters the credibility of the complaint. Specialized knowledge is particularly important with respect to a disease such as fibromyalgia, which is poorly understood within much of the medical community. In the case of fibromyalgia, the relevant specialty is rheumatology. Therefore, rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. Greater weight is given if the doctor is a rheumatologist" (internal quotations omitted).

The ALJ relied upon his medical expert, Dr. Beard, who is not a rheumatologist, to determine that fibrolmyaligia is "more of a system complex rather than a disease like rheumatoid arthritis" that does not meet 1.02.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir.2009). The rationale behind the rule is that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Kalmbach v. Commissioner of Social Sec.,* 409 Fed.App'x. 852, 860, 2011 WL 63602, 7 ( 6th Cir. 2011).

The ALJ must give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* Even if the ALJ does

---

(explaining that the signs for fibromyalgia, according to ACR, "are primarily the trigger points"); Social Security Disability Law and Proc. §5.71.

not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons" that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5. This procedural "good reason" rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of her case. *Rogers,* 486 F.3d at 242.

The ALJ stated that he gave little controlling weight to the letters from Dr. Mendez and Dr. Lie because they accepted Conner's subjective complaints, but they failed to discuss any functional limitations. Dr. Beard did specifically discuss Conner's functional limitations based upon his review of the record (Tr. 303-305).

Federal courts have taken a broad view on the evidence that can be used to support a finding of fibromyalgia. The Middle District of Pennsylvania found that it was error for an ALJ to require objective findings of fibromyalgia.[13]   The lack of objective findings has been held not to be

---

[13] *Foley v. Barnhart,* 432 F. Supp. 2d 465 (M.D. Pa. 2005); *Germany-Johnson v. Commissioner of Soc. Sec.,* 313 Fed. App'x 771, 778 (6th Cir. 2008); Social Security Procedure and Law §5:72.

determinative of the severity of the claimant's fibromyalgia.[14]   Trigger points are considered diagnostic proof of the disease.[15]

### Evaluation of the opinions of Dr. Mendez and Dr. Lie

Generally, a court will give substantial weight to the testimony of a treating physician unless (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.[16]

The SSA is arguing that the statements by both Dr. Albert Lie and Dr. Enrique Mendez are conclusory and properly disregarded by the ALJ.  In a statement dated August 23, 2006, Dr. Lie stated "I strongly believe that [Conner] is a good candidate for SSI disability" (Tr. 253).  In a statement dated August 22, 2006, Dr. Mendez stated that Conner "has symptoms that incapacitate her capability to work [sic], and it is my professional opinion that she is permanently and completely disabled" (Tr. 254).  The SSA argues that neither physician cited any clinical findings, laboratory tests, or observed physical or mental limitations to support their opinions.

The diagnosis of fibromyalgia by a doctor, particularly a doctor with specialized knowledge, is particularly important with respect to the diagnosis of fibromyalgia.[17]  In the instant case, Conner's treating physicians diagnosed fibromyalgia and determined that it is the cause of Conner's pain and

---

[14]  *Johnson v. Astrue*, 597 F. 3d 409, 412-413 (1st Cir. 2009); Social Security Law and Procedure §5:72.

[15]  *Rutledge v. Barnhart*, 391 F. Supp. 2d 1057 (N.D. Ala. 2005).

[16]  *Harris v. Astrue*, 546 F. Supp. 2d 1267 (N.D. 2008) quoting *Phillips v. Barnhart*, 357 F.3d 1232, 94 Soc. Sec. Rep. Serv. 123.

[17]  *Contreras v. Astrue*, 378 Fed. App'x 656, 658 (9th Cir. 2010).

8

fatigue. The evidence does not support a contrary finding.

The court in *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) held that statements that are brief and conclusory, and not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence may be properly rejected.  In Conner's case, the statements by the treating physicians are not conclusory because the record contains medically acceptable clinical evidence of fibromyalgia, namely the trigger point analysis.  A patient's reports of complaints or history, is an essential diagnostic tool in fibromyalgia cases, and a treating physician's reliance on such complaints "hardly undermines his opinion as to [the patient's] functional limitations." [18]

Conner argues that Dr. Lie's and Dr. Mendez's statements are "medical opinions," and that an analysis of the factors in 20 C.F.R. §404.1527(d) is required before the ALJ can reject those opinions. *See Newton v. Apfel,* 209 F.3d 448, 456–58 (5th Cir.2000) (requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician).

The ALJ must consider the six factors in subsection (d) with respect to the medical opinions of treating physicians. Subsection (d) is entitled "How we weigh medical opinions" and explicitly applies only to "medical opinions." Subsection (e) of the regulation expressly explains that some opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e) & (e)(3). Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work."

---

[18] *Johnson v. Astrue*, 597 F. 3d 409, 412 (1st Cir. 2009).

20 C.F.R. § 404.1527(e)(1). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." The factors set out at subsection (d) apply only to medical opinions, not opinions "reserved to the Commissioner." The conclusions by the treating physicians that Conner is disabled is not the only evidence in the record. Therefore, the ALJ was not justified in giving their opinions little weight.

### Credibility

The petitioner argues that the ALJ's reference to his observations of Conner's demeanor at the hearing constitutes reversible error. However, as noted by the SSA, it is permissible for the ALJ to cite to a claimant's demeanor if it is clear that the ALJ also considered other factors.

The ALJ's decision as to the credibility of petitioner's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence.[19] Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities;[20] (2) medication the claimant takes for pain;[21] (3) degree of medical treatment;[22] (4) lack of medical opinions in the record indicating claimant is precluded from performing the level of activity indicated by the ALJ[23]; and (5) external manifestations of debilitating pain such as marked weight

---

[19] *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986); *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991).

[20] *Falco v. Shalala,* 27 F.3d 160 (5th Cir.1994); *Anthony v. Sullivan,* 954 F.2d 289, 296 (5th Cir.1992); *Reyes v. Sullivan,* 915 F.2d, 151, 155 (5th Cir.1990)

[21] *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir.1990);

[22] *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services,* 894 F.Supp. 279 (E.D.Tex .8/3/1995).

[23] Villa v. Sullivan, supra;.

loss.[24]

The ALJ noted that Conner testified that

"she slept during the day since she has difficulty sleeping at night, but at the hearing she was knowledgeable and not sleepy at all. She testified to pain controlling her whole day but she testified calmly and demonstrated no pain whatsoever at the hearing. She also stated that she had bad memory but she testified about her past medications and impairments without any writings to help her. Here allegations of pain were not well-documented in the record.....She testified that she cared for her two dogs and was able to visit her family. She sat during the entire hearing without standing up - about 60 minutes." (Tr. 17)

The Commissioner argues that the ALJ considered many factors, not just Conner's demeanor at the hearing. (TR. 13-18)   The ALJ's observations were permissible, but should not have been determinative because the credibility of Conner's testimony regarding her symptoms should have been given great significance.[25] Conner's testimony was consistent with her treating physician's medical opinions, therefore it was error for the ALJ to find that she lacked credibility based upon his observation over a one hour period of time. [26]

## CONCLUSION

Finding a lack of substantial evidence to support the denial of Conner's  application for disability insurance benefits, the Commissioner's administrative decision is REVERSED and

---

[24] *Falco v. Shalala*, 27 F.3d 160 (5th Cir.1994); *see also* 20 C.F.R. §§ 404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993);  *McKnight v. Astrue*,  2008 WL 4387114, 4(W.D.La.,2008).

[25] *Harris v. Astrue*, 546 F.Supp. 2d 1267 (N.D. Fla. 2008) quoting *Phillips v. Barnhart*, 357 F. Supp. 1232 (11th Cir. 2004).

[26] *McElroy v. Astrue*, 237 Fed. App'x 167 (9th Cir. 2007); *Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2009); Social Security Disability Law and Procedure §5:73.

remanded for further proceedings.   This court finds that the ALJ's determination that petitioner has the residual functional capacity to return to her past work is NOT supported by substantial evidence.

Lake Charles, Louisiana, this _15_ day of May, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

12